UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :
                                                :
ELFAND ORGANIZATION LLC,                        :       Chapter 7
d/b/a EMPIRE CANABIS CLUBS,                     :
                                                :       Case No. 25-10308 (MEW)
                                    Debtor.     :
------------------------------------------------------------x

### DECISION DENYING MOTIONS FOR RECONSIDERATION OF ORDERS GRANTING STAY RELIEF AND CONVERTING CASE TO CHAPTER 7

A P P E A R A N C E S :

ROBERT MARX
Northport, NY
Attorneys for Debtor Elfand Organization LLC
By: Robert Marx, Esq.

WINDELS MARX LANE & MITTENDORF, LLP
New York, NY
Attorneys for Chapter 7 Trustee
By: Alan Nisselson, Esq.

LAW OFFICES OF ANDREW M. TILEM
New York, NY
Attorneys for 268 Metropolitan Ave LLC
By: Andrew M. Tilem, Esq.

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

I entered an Order dated September 26, 2025 (the "**Surrender/Stay Relief Order**," ECF No. 45), in which I directed Debtor Elfand Organization, LLC (the "**Debtor**") to surrender real property located at 268 Metropolitan Avenue, Brooklyn, New York (the "**Property**") to 268 Metropolitan Avenue LLC (the "**Landlord**") and in which I lifted the automatic stay to permit the Landlord to take any action necessary to recover possession of the Property.  I entered a

1

separate Order on September 30, 2025 (the "**Conversion Order**," ECF No. 49) in which I directed that the Debtor's chapter 11 case be converted to a case under chapter 7 of the Bankruptcy Code. The Debtor has filed timely motions seeking reconsideration of these orders. *See* ECF Nos. 53, 56.

Motions for reconsideration will generally be denied "unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration or reargument "must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." Local Bankruptcy Rule 9023-1(a). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

**1.    The Surrender/Stay Relief Order**

The Debtor filed its chapter 11 case on February 18, 2025. Section 365(d)(4) of the Bankruptcy Code requires a debtor to file a motion to assume or reject a lease of nonresidential real property within the first 120 days after a bankruptcy petition is filed, unless an extension of that time is sought and granted before the 120 days expires. 11 U.S.C. § 365(d)(4). There is no dispute that the Property is nonresidential real property that was subject to the provisions of section 365(d)(4).

In August 2025, the Landlord filed a motion for relief from the automatic stay so that it could continue with an eviction proceeding against the Debtor. (ECF No. 33.) I held a hearing

on that motion on September 16, 2025. I noted at that hearing that the section 365(d)(4) deadline had expired in June 2025, that the Debtor had never filed a timely motion seeking to assume or reject the lease for the Property and had never sought an extension of the deadline. Pursuant to the plain language of section 365(d)(4), as a result, the lease was deemed to have been rejected, and the Debtor was obligated immediately to surrender the Property to the Landlord. *See* 11 U.S.C. § 365(d)(4).

The Debtor argues in its motion for reconsideration that the Landlord violated the automatic stay and that this somehow had the effect of either nullifying the effect of section 365(d)(4) or extending the deadlines imposed by section 365(d)(4). I was fully aware of this issue when I made my initial rulings and I discussed them at the September 16, 2025 hearing, and the Debtor has identified nothing new that would warrant reconsideration.

The sequence of events was as follows:

- The Debtor filed a prior bankruptcy case (Case No. 24-12122) before Judge Beckerman in this Court on December 2, 2024.

- On December 10, 2024, the Landlord filed a petition in the Kings County Civil Court seeking to recover possession of its property. L/T Docket, No. 1.[1] The record is not clear as to whether the Landlord was aware of the bankruptcy filing, but at a later stage in the Civil Court proceedings the Landlord's counsel alleged that the Landlord had not been given notice of any of the bankruptcy filings. *Id.*, No. 23, ¶¶ 2, 10.

---

[1] The state court docket is hereafter referred to as the "**L/T Docket**" and is available at: https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=GO/XnxJ1P5aOErCJqDVJ Mw==&display=all&courtType=Kings%20County%20Civil%20Court%20-%20Landlord%20and%20Tenant%20Division&resultsPageNum=1.

3

- The Debtor did not file a notice of bankruptcy and did not otherwise respond to the petition in the Landlord/Tenant proceeding.

- Judge Beckerman dismissed the Debtor's prior bankruptcy filing by Order entered January 29, 2025. *See* Case No. 24-12122, ECF No. 31. On February 18, 2025, however, the Debtor filed the above-captioned bankruptcy case. Again, no notice of bankruptcy was filed in the Civil Court action.

- On February 21, 2025, the Civil Court entered an order of possession in favor of the Landlord. L/T Docket, No. 6.

- It was not until May 2025 that the Debtor filed documents notifying the state court of its prior December 2024 bankruptcy filing and of its renewed February 2025 bankruptcy filing. L/T Docket, Nos. 11, 12.

- The Civil Court promptly issued an Order to Show Cause on May 15, 2025 as to why the warrant of eviction should not be stayed, why the prior judgment should not be vacated, and why the Civil Court petition should not be dismissed. *Id.*, No. 13.

- For reasons that have never been explained, the Debtor then stipulated to the entry of an Order in the Civil Court in which (a) the Debtor consented to the jurisdiction of the Civil Court, (b) the prior judgment and warrant were vacated, and (c) the Debtor agreed to entry of a final judgment of possession but with the execution of a warrant of eviction to be stayed on the condition that the Debtor make certain agreed payments. L/T Docket No. 33. The Debtor did not make those payments, however.

4

I do not understand why the Debtor failed to provide more prompt notice of the bankruptcy filing to the Civil Court. I also do not understand why the Debtor itself stipulated to the entry of a judgment in the Civil Court in August 2025. I denied the Debtor's request for the imposition of sanctions based on the proceedings in the Civil Court because, as I explained at the September 16 hearing, it appeared that the Debtor was responsible for some of what had happened and that the Debtor itself had endorsed the continuation of the Civil Court proceedings by stipulating to the entry of a judgment in August 2025. The Debtor has not sought reconsideration of that portion of my September 26, 2025 Order.

The Debtor argues in its motion for reconsideration that the deadline under section 365(d)(4) "could not have begun to run while the landlord had unlawfully evicted the Debtor" because the state court order allegedly had the temporary effect of annulling the landlord-tenant relationship as a matter of law. Motion (ECF No. 53) at 2. This is a non-sequitur. The Debtor itself previously argued (and has continued to argue in its motion for reconsideration) that "[a]cts taken in violation of § 362(a) are void *ab initio*." *Id.* at 1, 2, 4; *see also* ECF No. 42 (Debtor's argument that the Civil Court proceedings were "in violation of the automatic stay" and were "void and without legal effect"). This is plainly correct. Any and all proceedings in the Civil Court that occurred while a bankruptcy case was pending were automatically void and of no effect by virtue of the automatic stay. *See Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP)*, 422 Fed. Appx. 15, 17-18 (2d Cir. 2011) (holding that proceedings that continued after an automatic stay took effect were void and of no effect). This is true even if the parties, and the Civil Court, were not aware of the bankruptcy filing. *Id.* at 18 (actions taken

5

after the stay took effect were void even if the parties and the tribunal were not aware of the stay); *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992) (same).

The Debtor and the Landlord agreed, and I so held in my September 26, 2025 Order, that the proceedings in the Civil Court were null and void. No order entered by the Civil Court while the automatic stay was in effect could have "annulled" the landlord-tenant relationship, as the Debtor has argued. The Debtor cannot acknowledge (as it has) that the Civil Court orders were entirely null and void, while at the same time asserting that the Civil Court proceedings somehow had actual effects for purposes of the application of section 365(d)(4).

The Debtor also argues in its motion for reconsideration that I had to "remedy" the stay violation by restoring the Debtor's possession of the premises before I could do anything else, and that this somehow meant that the 365(d)(4) deadlines did not apply in the meantime. As already explained, however, there was nothing that needed to be remedied. The Civil Court order was null and void and did not alter the Debtor's legal rights. The Civil Court proceedings also had no actual effect on the Debtor's access to the Property or its ability to use the Property. The Debtor has been prohibited from using the Property by virtue of Sheriff's orders that were issued prior to the bankruptcy filings. Those Sheriff's orders remain in effect.

There is nothing in 365(d)(4) that says that a state court order in violation of the stay affects the federal deadline for assumption or rejection of a lease. If there was a stay violation then the proper course for the Debtor was to seek prompt relief from me and a prompt declaration of the parties' rights. The Debtor did not have the right, in the meantime, to ignore the clear terms of section 365(d)(4).

6

The Debtor also has argued that the 365(d)(4) deadline "could not have run" because the Debtor was not represented by counsel. I noted on September 16 that John C. Kim entered an appearance as counsel for the Debtor on March 10, 2025. ECF No. 13. The Debtor's current counsel has attempted to characterize this as a limited appearance, made solely to oppose certain stay relief motions that other landlords had filed. However, there is nothing in Mr. Kim's notice of appearance that contains any such limitation.

It also was the debtor's obligation to appoint counsel to represent it. The Debtor's failure to do so was one of the reasons why its prior bankruptcy case was dismissed. A Debtor cannot rightly ask to be excused from one set of obligations (those imposed by 365(d)(4)) on the grounds that the Debtor has breached its own obligation to retain and employ counsel.

Finally, the Debtor argues that my "surrender' order was the equivalent of an annulment of the Debtor's state law L-T rights, and it contends that only a state court can annul such rights. During oral argument of the reconsideration motions on November 4, 2025, the Debtor's counsel acknowledged that this argument is without merit. Section 365(d)(4) says explicitly that if a commercial lease has not been assumed within the stated time period the property must "immediately" be surrendered. 11 U.S.C. § 365(d)(4). My Order just directed the Debtor to do what the statute required.

The Court did not fail apply any controlling law and did not overlook any controlling facts. The motion for reconsideration of the Surrender/Stay Relief Order is denied.

B.     **The Conversion Order**

The Debtor's first bankruptcy case was dismissed by Judge Beckerman because the Debtor had failed to appear by counsel and had failed also to file various required documents.

7

Case No. 24-12122, ECF No. 31.  The Debtor similarly has failed to file required documents in this bankruptcy case.  More particularly:

- Section 521 of the Bankruptcy Code required the Debtor to file, with its petition, a list of all creditors.  11 U.S.C. § 521.  Local Bankruptcy Rule 1007-2 also required the filing of an affidavit as to certain background facts relevant to a chapter 11 filing.  The Debtor did not comply with either obligation, and to this day it has not filed the creditor list or the Rule 1007-2 affidavit.

- Section 521 required the Debtor to file a number of other schedules, statements and documents within 15 days after the commencement of the case (*i.e.,* by March 4, 2025), unless the Court ordered otherwise.  The required documents included a Schedule listing all of the Debtor's Assets and Liabilities; a Schedule of Current Income and Current Expenditures; a Statement of Financial Affairs; and a Statement of Monthly Net Income.  None of these filings has been made.

On August 19, 2025, the Office of the United States Trustee filed a motion to dismiss this case or, in the alternative, to convert it to a case under chapter 7.  (ECF No. 28.)  The Trustee noted that the Debtor had not made the required filings though more than 6 months had passed since its filing.  The Trustee further represented that the Debtor had failed to appear at two meetings of creditors that had been scheduled pursuant to section 341 of the Bankruptcy Code and that the Debtor had a statutory obligation to attend.  In addition, it noted that the Debtor had not filed any of the Monthly Operating Reports that are required by the UST's Operating Guidelines and that the Debtor had failed to pay the fees that are payable under 28 U.S.C. § 1930 and 31 U.S.C. § 3717.  Finally, the Trustee argued that the Debtor was acting in bad faith as was

attempting to use the bankruptcy system to frustrate its landlords and for no other apparent purpose.

A debtor's unexcused failures to make timely filings of required documents, its failures to attend meetings of creditors and its failures to pay fees owed to the U. S. Trustee each constitute grounds for the dismissal or conversion of a chapter 11 case. *See* 11 U.S.C. § 1112(b)(4). The Debtor has never disputed any of the foregoing delinquencies. The Debtor did not even file a timely response to the Trustee's motion. The Office of the United States Trustee filed a certificate of no objection on September 26, 2025, a few days in advance of the scheduled hearing on September 30, 2025. (ECF No. 46.) It was only then that the Debtor filed a belated request for more time to respond on September 26, and argued that its filing deficiencies were "curable" and did not warrant dismissal. (ECF No. 47).

I did not dismiss the Debtor's case, but I did grant the motion for a conversion of the case to chapter 7. ECF No. 49. The Debtor had complied with virtually none of its statutory obligations during the first nine months that the case had been pending.

The Debtor seeks reconsideration (ECF No. 56) on the ground that the Debtor "had just retained counsel after a period of financial hardship" and that a conversion to chapter 7 was "premature." As noted above, the assertion that the Debtor did not have counsel is false. The Debtor appeared through counsel (John Kim) on March 10, 2025. ECF No. 13. It also is the obligation of an entity (such as this Debtor) to retain and to appear through counsel. The Debtor plainly knew of this requirement, as it was one of the reasons why its prior bankruptcy case had been dismissed. If (as the Debtor now asserts) it had defaulted on this obligation by not retaining

9

counsel for more than 7 months, that is no grounds on which to excuse the Debtor from its defaults with respect to its other obligations.

The Debtor also now asserts that the Court erred by converting the case to chapter 7 "without a developed" factual record. Motion (ECF No. 56) ¶¶ B, C. But the relevant facts are not in dispute. The failures to file required documents are plain from the docket of this case, and all of the other delinquencies were never contested by the Debtor. The Debtor argues that I should have taken more evidence before converting the case on the grounds of bad faith, but that is not the basis on which I entered the Conversion Order. I did express my concerns (at the hearing) about the Debtor's good faith, but it was the Debtor's long-standing and unexcused failures to comply with any of its obligations as a chapter 11 debtor that warranted the conversion to chapter 7. I note, in this regard, that the Debtor is obligated to make the required filings notwithstanding the conversion to chapter 7, and that the Debtor still has not done so.

Curiously, the Debtor also now argues that perhaps I should have dismissed the case rather than converting it to chapter 7. Section 1112(b) of the Bankruptcy Code gave me discretion to determine what course of action would best serve the interests of creditors. *In re BH S&B Holdings, LLC*, 439 B.R. 342, 351 (Bankr. S.D.N.Y. 2010) ("It is within the Court's discretion to convert or dismiss a chapter 11 case, provided the best interests of the creditors and the estate are served.") I concluded that a dismissal would not serve the interests of the Debtor's primary creditors, who were landlords who were still attempting to recover their properties and whom the Debtor was still trying to hold at bay. I noted at the September 30 hearing that the Debtor had failed to assume any of its nonresidential real property leases within the deadline set by section 365(d)(4), that this failure gave the landlords certain rights, and that a dismissal could

raise issues as to those rights and as to whether the landlords needed to take other action to recover properties. The Debtor also had failed to identify all of its assets and had failed to disclose possible preferential transfers or transfers to insiders, which are matters a chapter 7 trustee can and should identify and pursue for the benefit of the Debtor's creditors. *Id.* at 351 (determining that converting a case to chapter 7 to permit a chapter 7 trustee to reach assets for the benefit of creditors was "cause" to convert a case).

The Debtor argue in its papers that the Court "was unaware that Debtor operates a farming enterprise" (Motion, ECF No. 56, at 3-4) and that this allegedly means, under section 1112(c) of the Bankruptcy Code, that the case could not be converted to chapter 7. 11 U.S.C. § 1112(c). Section 1112(c) states that a case cannot be converted to chapter 7 if the debtor is a "farmer," but a debtor is not a "farmer" for this purpose unless the debtor received more than 80 percent of its gross income from a farming operation during the taxable year immediately preceding the bankruptcy filing. 11 U.S.C. § 101(20). At oral argument the Debtor's counsel acknowledged that he had no evidence that the Debtor could qualify as a "farmer" under this definition. I also note that if "farming" operations allegedly were relevant then they ought to have been raised by Debtor at an earlier stage and in response to the motion that the U. S. Trustee had filed. A party is not permitted to raise new arguments in a motion for reconsideration that it could and should have raised earlier. *See Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (observing that a motion for reconsider is not "an opportunity for making new arguments that could have been previously advanced"). If anything, the alleged existence of these prior undisclosed assets and businesses, and the utter lack of clarity as to what revenues they might be generating and how those revenues were being used, just

11

showed the seriousness of the Debtor's failures to file the Schedules and Statements that were required under section 521.

The Debtor argues that its newly-retained counsel did not have ample opportunity to apprise himself of the case and to have the necessary filings made prior to the entry of the Conversion Order. However, as noted above the Debtor appeared by counsel (Mr. Kim) on March 10, 2025 – nearly five months prior to the U. S, Trustee's Motion, which was filed on August 19, 2025. ECF Docket Nos. 13, 28. Debtor's newly-retained counsel, Mr. Marx, appeared in the case on September 3, 2025 (ECF No. 34), which was 27 days before the September 30 hearing date on the United States Trustee's Motion – more than the 15 days that ordinarily is provided for the submission of the required documents. The Debtor still has not made the required filings, though more than two months have passed since Mr. Marx's appearance. There was nothing "premature" about the entry of the Conversion Order.

The unstated premise of the Debtor's motion for reconsideration is that I should not take the Debtor's many defaults seriously. Quite the opposite is true. The required Statements and Schedules are essential to identify the assets to be administered in a bankruptcy case, to identify the creditors who may be entitled to receive distributions and who otherwise are entitled to be heard in the case, and to ensure that relevant claims that may belong to a debtor are properly identified and promptly pursued. Like every legal proceeding, a bankruptcy case is supposed to proceed as efficiently and expeditiously as possible. The Debtor has never offered any legitimate excuse for its utter failures to comply with its obligations in this regard.

I find that there are no matters that I overlooked, no legal errors that I made, and no new evidence that would warrant reconsideration of the Conversion Order.

A separate Order will be entered to reflect the rulings set forth in this Decision.

Dated: New York, New York
November 20, 2025

                                              **s/Michael E. Wiles**
                                              HONORABLE MICHAEL E. WILES
                                              UNITED STATES BANKRUPTCY JUDGE